UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY MARTINEZ,<br><br>    Petitioner,<br><br>v.<br><br>WILLIAM SULLIVAN,<br><br>    Respondent. | Case No. 17-cv-04436-JD<br><br>**ORDER RE PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY**<br><br>Re: Dkt. No. 1 |

Petitioner Ricky Martinez is a California state prisoner who seeks federal habeas relief under 28 U.S.C. Section 2254(d). Dkt. No. 1. He was charged with one count of oral copulation or sexual penetration with a child 10 years of age or younger, Cal. Pen. Code § 288.7(b) (Count 1), and two counts of lewd or lascivious conduct on a child under the age of 14 by force, violence, duress, menace, or fear, Cal. Pen. Code § 288 (b)(1) (Counts 2 and 3). A jury convicted Martinez on Counts 1 and 2, and acquitted him on Count 3. He was sentenced to a prison term of twenty-one years to life.

The petition asserts constitutional claims based on the admission of an opinion about guilt made by a witness at trial, and defense counsel's failure to object to that testimony or request a limiting instruction. The California Court of Appeal rejected these arguments and affirmed the sentence on direct appeal. The Court of Appeal acknowledged that the trial had not been flawless and that the opinion evidence should not have been admitted or allowed to stand without a limiting instruction. Nevertheless, the court concluded that the errors did not contribute to the jury's verdict in light of other, overwhelming evidence of guilt, and that counsel's failure to act was not prejudicial.

**BACKGROUND**

The Court of Appeal provided a detailed description of the material facts and trial proceedings. *People v. Martinez*, No. H041273, 2016 WL 3579025 (Cal. Ct. App. June 24, 2016)

1 (unpublished); Dkt. No. 12-4. Neither party disputes the court's statements, and they will not be
2 presented *in toto* here.

3       In summary, the victim, Cessaria Doe, was 14 years old at the time of trial. Martinez is a cousin of Cessaria's father, and Cessaria has known Martinez her whole life. Cessaria testified about two incidents that occurred when she was 10 years old. The first was the subject of Counts 1 and 2, and the second of Count 3. The first incident occurred at Martinez's residence. Cessaria testified that he directed her into a bedroom, locked the door by placing a knife in the doorjamb, played a sexually explicit video, and sexually assaulted her. When Cessaria tried to push him away and leave, Martinez held her down. She was able to run out of the bedroom when someone walked through the home's front door. *Martinez*, 2016 WL 3579025, at *1.

      The second incident occurred at another residence where Martinez lived. Cessaria testified that she was sleeping in a room with Martinez's children when Martinez started rubbing her waist area. Cessaria stood up, pulled her shirt down, and ran out of the room to her mother. In a police interview, she had said this incident occurred during a party at the home of Martinez's sister. *Id.* at *2. Cessaria's parents testified that she told them about both incidents, and one of Cessaria's friends testified that Cessaria told her around the same time that she had been "raped" by her uncle. *Id.*

      At trial, Veronica Doe, Martinez's 35-year-old cousin, testified that he had sexually assaulted her when she was about 10 years old and again when she was a little older. She also testified that she learned of the assaults on Cessaria when she overheard her mother speaking on the telephone to an investigator or attorney. Veronica testified that she immediately thought, "It's true because he did it to me." She also testified to the thought that "I know he's capable of this." *Id.*

      Martinez called family members at trial to impeach Cessaria's and Veronica's testimony with details about the clothes Martinez was wearing, the furniture in his bedroom, whether he possessed any pornographic videos, and other testimony. Martinez's mother and sister alleged that Veronica had lied and had contradicted statements she had made in the weeks before trial. Another of Martinez's nieces, Esmeralda, who was 16 years old at the time of trial, testified that

she had lived with him when she was 6 or 7 years old, and he never touched her inappropriately. *Id.* at *3.

After the jury found him guilty on Counts 1 and 2, Martinez appealed on two grounds. He argued that the trial court had improperly allowed Veronica to opine on Martinez's guilt. He also claimed his counsel was ineffective by failing to object to Veronica's testimony or request a limiting instruction. Before trial, the defense had moved to limit Veronica's testimony regarding the telephone conversation she overheard. The trial court granted the motion, and said Veronica would be allowed only to explain why she chose to come forward in this case, but not opine on Martinez's guilt. 1 RT 7-8, 14-16. The trial court also said it would instruct the jury to consider the evidence for this purpose only. Nevertheless, when Veronica testified, defense counsel did not object or request a limiting instruction, and the court did not give one.

The Court of Appeal affirmed the convictions. While it concluded that the trial court "erred in admitting Veronica's opinion testimony" and failing to give a limiting instruction, it determined that the error did not contribute to the guilty verdict for several reasons. *Martinez*, 2016 WL 3579025, at *5. The Court of Appeal turned down the ineffective assistance claim after concluding that the failure to object or request a limiting instruction were not reasonably likely to have prejudiced Martinez in light of the trial as a whole. *Id.* The court also determined that Martinez's cumulative effect argument did not warrant changing the verdict. The California Supreme Court denied Martinez's petition for review.

## LEGAL STANDARDS

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Carrillo v. Muniz*, No. 16-CV-00565-JD, 2018 WL 6251385, at *1 (N.D. Cal. Nov. 29, 2018). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams*

3

*v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409. "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under Section 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). In conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Section 2254(d)(2) also sets "a daunting standard -- one that will be satisfied in relatively few cases. Nevertheless, the standard is not impossible to meet." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Miller-El*, 537 U.S. at 340 ("Deference does not by definition preclude relief. A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable").

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423

4

F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the Court looks to the last reasoned opinion from a lower court. *See Nunnemaker*, 501 U.S. at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). In this case the Court looks to the opinion by the California Court of Appeal for all the claims in the petition.

## DISCUSSION

### I.  ADMISSION OF VERONICA'S TESTIMONY

Martinez asserts a Sixth Amendment violation of his right to a jury trial and a violation of due process under the Fourteenth Amendment. Veronica testified that Martinez sexually assaulted her twice when she was a child. *See* 3 RT 189-92. That part of her testimony was admitted as propensity evidence and is not in dispute. Martinez challenges only the portion of Veronica's testimony about her reaction to overhearing a telephone conversation between her mother and an investigator or attorney about Martinez's alleged sexual assault of Cessaria. She testified, "And I was all, 'It's true because he did it to me.'" 3 RT 193. The prosecutor then asked Veronica, "And your instant reaction was 'I know he's capable of this'?" Veronica responded, "Yes. I didn't think -- I didn't think he would do that again." 3 RT 193-94.

The Court of Appeal rejected Martinez's arguments on this point, which he largely repeats here. He has not shown an error that might support a grant of the petition. To start, the Court of Appeal faulted the trial court for admitting this testimony under California state law, which bars witnesses from expressing an opinion about a defendant's guilt or innocence. *Martinez*, 2016 WL 3579025, at *5. The court also chided the trial court for not following its own in limine ruling to give a limiting instruction after the testimony. *Id*. The Court of Appeal's conclusions under state evidence law may not be reviewed in a federal habeas proceeding, and Martinez's arguments on that score are misdirected. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).

His federal constitutional claims also do not carry the day for habeas relief. The Court of Appeal evaluated the testimony under *Chapman v. California*, 386 U.S. 18 (1967), which requires reversal unless the government proves "beyond a reasonable doubt that the error complained of

5

did not contribute to the verdict obtained." *Id.* at 24. When a state court finds an error to be harmless, as it in effect did here, its determination is reviewed under the deferential AEDPA standard. This means that relief is not available unless the state court's "'*harmless determination itself was unreasonable.*'" *Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015) (quoting *Fry v. Pliler*, 551 U.S. 112, 119 (2007)) (italics in original). In other words, a federal court may grant relief only if the state court's harmlessness determination "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). And if the federal court determines that the state court's harmless-error analysis was objectively unreasonable, it also must find that the error was prejudicial under *Brecht v. Abrahamson*, 507 U.S. 619 (1993), before it can grant relief. *See Fry v. Pliler*, 551 U.S. 112, 119-20 (§ 2254(d)(1) did not displace *Brecht*).

Because the court on direct appeal correctly identified the *Chapman* standard, *see Martinez*, 2016 WL 3579025, at *5, the question is whether its application of the standard was unreasonable. Martinez has not shown that it was. The court concluded that the opinion testimony was a "very brief portion" of Veronica's overall testimony, and "revealed very little information pertaining to defendant's guilt." *Id.* at *5-6. Specifically, the court noted that Veronica did not tell the jury about the substance of the telephone conversation she overheard, so it was unclear what exactly she thought was "true." In addition, the court determined that Veronica's testimony was "just a fraction" of the prosecution's evidence, and that she was subject to impeachment testimony by witnesses who knew her and said she was lying. The court viewed Martinez's acquittal on Count 3 as an indication that the jury did not abdicate its fact-finding function, and that it fairly considered how much weight to give Veronica's testimony. *Id.*

Martinez has not proffered anything to call these conclusions into question, let alone to show that the Court of Appeal's analysis was unreasonable. For the most part, Martinez simply insists that Veronica's testimony must have affected the jury and caused the guilty verdict. *See, e.g.*, Dkt. No. 1 at 18-19. But the state court's analysis reasonably reached a contrary conclusion based on an examination of the record as a whole through the lens of the proper federal constitutional standards. Martinez does not point to any infirmities in the analysis that would

6

warrant overturning the state court's findings. Nor has he shown that an error was prejudicial to him under *Brecht.*

It is also worth noting that Martinez has not shown that his habeas claim is based on a violation of a "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). It is true, of course, that the Sixth Amendment guaranteed Martinez the right to a fair jury trial, but it is far from clear that the fleeting opinion testimony was of such a nature as to effectively deprive him of that right. Martinez cites state-court cases focused on the admissibility of opinion testimony under state law, which, as discussed, is not a basis for relief in federal habeas proceedings. *See* Dkt. No. 1 at 8-9; *Estelle,* 502 U.S. at 67. He cites federal cases that either dealt with admissibility under the Federal Rules of Evidence, which have no bearing on Martinez's state-court proceedings, or made general statements about the jury's fact-finding function without ever articulating a constitutional standard applicable here, let alone a clear claim for habeas relief under the Sixth Amendment. *See, e.g.*, *Sartor v. Arkansas Nat. Gas Corp.*, 321 U.S. 620, 628 (1944); *Jackson v. Denno*, 378 U.S. 368, 387 (1964); *United States v. Young*, 470 U.S. 1, 18-19 (1985). In *Young*, for example, the Supreme Court affirmed a defendant's "right to be tried solely on the basis of the evidence presented to the jury," and cautioned that a jury should not be "influenced to stray from its responsibility to be fair and unbiased." 470 U.S. at 18-19. The court warned against comments by trial counsel that implied that the proceedings were unfair, and comments from prosecutors suggesting that evidence outside the record required trusting a particular witness or reaching a particular result. That is a far cry from the situation here. The government did not induce the jury to trust its judgment rather than its own view of the evidence, *see id.*, and Martinez has not shown that Veronica's statements had that effect either. The jury was not pressured into taking Veronica's testimony at face value, or led to believe that Martinez's trial was a sham, and it remained perfectly free to credit or discredit Veronica's opinion in light of the entire trial evidence. *See also United States v. U.S. Gypsum Co.*, 438 U.S. 422, 446 (1978).

Martinez also claims that admission of Veronica's testimony was improper under the Fourteenth Amendment because the evidence was "unduly prejudicial." Dkt. No. 1 at 9. But the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial

7

evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009); *see also Estelle*, 502 U.S. at 70 ("Concluding, as we do, that the prior injury evidence was relevant to an issue in the case, we need not explore further the apparent assumption of the Court of Appeals that it is a violation of the due process guaranteed by the Fourteenth Amendment for evidence that is not relevant to be received in a criminal trial."). Veronica's testimony was generally admissible as propensity evidence and to explain her decision to testify against Martinez. As noted above, any testimony by Veronica about Martinez's guilt in this case did not violate a clearly established federal constitutional standard, and it did not otherwise usurp the jury's fact-finding function or deprive him of a fair trial.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Martinez's claim of ineffective assistance of counsel is equally unavailing. He says his attorney's failure to object to Veronica's testimony or press the trial court for a limiting instruction amounted to a deprivation of his constitutional right to counsel under the Sixth Amendment. The Court of Appeal denied this claim, concluding that any deficiency in the performance of his trial counsel was not prejudicial in light of the trial and evidence as a whole.

Under well-established Supreme Court precedent, a habeas petitioner alleging ineffective assistance of counsel must show that "counsel's performance was deficient," and that the "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, the petitioner "must show that counsel's representations fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Unless a petitioner makes both showings, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under Section 2254. *See Cullen v. Pinholster*, 563 U.S. 170, 202 (2011). The "question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562

U.S. at 105. "Surmounting *Strickland*'s high bar is never an easy task" and establishing that a state court's application of *Strickland* was unreasonable under Section 2254(d) "is all the more difficult." *Id.* at 105 (internal quotation omitted). Prejudice may be presumed only when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 659-60 (1984).

A difference of opinion over trial tactics does not constitute denial of effective assistance, *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981), and tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available, *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984). A failure to make evidentiary objections does not render assistance ineffective unless challenged errors can be shown to have prejudiced the defense. *United States v. Gibson*, 690 F.2d 697, 703-04 (9th Cir. 1982); *Lang v. Callahan*, 788 F.2d 1416, 1418 (9th Cir. 1986). The same is true for a failure to object to the prosecutor's closing remarks. *Weygandt v. Ducharme*, 774 F.2d 1491, 1493 (9th Cir. 1985).

Martinez has not shown the Court of Appeal's application of *Strickland* was objectively unreasonable. The court reasonably concluded that since the admission of Veronica's testimony was not prejudicial, the failure by Martinez's counsel to object to that same evidence, or insist on a limiting instruction, was not prejudicial either. *Martinez*, 2016 WL 3579025, at *6.

Martinez's suggestion that his case was a "close" one and that it is reasonably probable that, but for objections to Veronica's testimony, the jury would have acquitted him on Counts 1 and 2, just as it did on Count 3, Dkt. No. 1 at 19, is not well taken. The jury was presented with ample evidence of Martinez's guilt entirely beyond and independent of Veronica's opinion testimony, including testimony from the victim, her parents, one of her friends, and an expert. The acquittal on Count 3 does not mean the jury was close to acquitting him on Counts 1 and 2. The jury was free to conclude that Counts 1 and 2 were supported by far weightier evidence of guilt unrelated to Veronica's testimony. *See Park v. California*, 202 F.3d 1146, 1150 (9th Cir. 2000) ("We have held that the failure of the jury to convict on all counts is the best evidence of the jury's ability to compartmentalize the evidence.") (quotation omitted). For example, Cessaria testified in contradictory fashions in her police interview and at trial about the location of the second incident.

Dkt. No. 1 at 4. Similarly, Martinez acknowledges that he presented a "long succession of witnesses" to poke holes in the prosecution's case on the second incident, which only went to Count 3. *Id.* at 22-23 (citing 5 RT 544, 471, 622, 663-64; 6 RT 555-56, 672, 718, 767-69, 771, 822-23). In addition, any objection to Veronica's testimony would have come on top of vigorous questioning by Martinez's counsel and impeachment testimony by members of Martinez's family. *See, e.g.*, 3 RT 195-208; 5 RT 458, 489; 6 RT 788. Finally, even if the trial court had excluded Veronica's contested testimony or given a jury instruction, Veronica would still have been allowed to provide testimony of her own sexual assaults by Martinez, based on which the jury could have inferred guilt. On this record, it was not unreasonable for the Court of Appeal to conclude that Martinez failed to establish *Strickland* prejudice. *Walker v. Martel*, 709 F.3d 925, 944 (9th Cir. 2013).

Other factors also give rise to substantial doubt that trial counsel's performance was objectively unreasonable. Although the Court of Appeal addressed only *Strickland*'s prejudice prong, counsel's decision not to object may well have been a reasonable trial tactic. Counsel unquestionably knew she could object to Veronica's testimony, since she won a motion in limine on this point before trial. Her cross-examination of prosecution witnesses, and introduction of witnesses in Martinez's defense also indicate that she was generally skilled and prepared during the trial. The transcript shows that Veronica was pained and distraught during her testimony. 3 RT 187, 191, 193-95. Trial counsel may have considered that the value of an objection at that moment was outweighed by the risks of alienating the jury and drawing further attention to Veronica's evidence of her own sexual assaults by Martinez. Counsel may also have concluded that Veronica's contested testimony was of little import in light of the propensity evidence the jury would hear anyway. In these circumstances, Martinez is effectively second-guessing in hindsight the effectiveness of his trial counsel's tactics, which *Strickland* does not allow.

Overall, the state court's determination that trial counsel did not provide inadequate representation was neither contrary to, nor an unreasonable application of, clearly established law, and Martinez has not shown that "counsel entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659-60.

## CONCLUSION

The petition is denied. A certificate of appealability is also denied. The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Cases, Rule 11(a).

A judge may grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Martinez has not shown a certificate is warranted, and it is not granted.

**IT IS SO ORDERED.**

Dated: April 26, 2019

JAMES DONATO
United States District Judge